# The York Bank's Appeal.

A judgment confessed by one partner in the name of the firm, though void as to his copartners, is good as between him and the creditor, not only as evidence of the amount of his indebtedness, but as a lien upon his real estate within the county.

A judgment against a firm, entered on the judgment docket, without setting forth the Christian names of the several partners, is without effect as a lien, so far as respects subsequent purchasers and encumbrancers.

But as between the parties, the entry upon the judgment docket is not necessary to create a lien upon the defendant's real estate. The only effect of a defective entry is, a failure to give notice to subsequent purchasers and encumbrancers.

If a subsequent encumbrancer have *actual* notice of a judgment so defectively entered, before his rights attach, it is equivalent to the constructive notice required to be given by entry on the judgment docket.

APPEAL from the Common Pleas of *York county*.

This was an appeal by the York Bank from the decree of the court below distributing the proceeds of a sheriff's sale of the real estate of John A. Nevin, under an execution against the firm of Pflieger, Hess & Nevin.

On the 24th February 1858, John A. Nevin, a member of the firm of Pflieger, Hess & Nevin, executed two judgment-notes, under seal, in the name of the firm, in favour of the York Bank; one in the sum of $7341.72 to secure the payment of two notes of the firm, each for $3670.86; and the other, for $8791.91, to secure a number of notes, endorsed by various parties for the accommodation of the firm, and discounted by the York Bank; the first of these judgments was entered up on the 24th February 1858, and the other on the 25th.

These judgments were entered by the prothonotary, in accordance with the signatures to the judgment-notes, against the firm of Pflieger, Hess & Nevin, and they were indexed under the names of each partner respectively, without setting forth their Christian names.

On the 16th June 1858, George Welsh, Jeremiah Hess, Jeremiah G. Hess, G. P. Nevin, and Gates J. Weiser & Co., obtained from the firm of Pflieger, Hess & Nevin a judgment-bond, conditioned for the payment of $9425, to secure them against certain endorsements for the accommodation of the firm. On this bond, judgment was entered on the 17th June, against John Pflieger, Sallie A. Hess, and John A. Nevin, partners trading under the name and firm of Pflieger, Hess & Nevin. It was also properly entered upon the judgment docket, and indexed under the names of the respective defendants.

[The York Bank's Appeal.]

At the next court, an application was made on behalf of John Pflieger and Sallie A. Hess, to have the judgments in favour of the York Bank set aside as to them, on the ground that they did not join in the execution of the notes on which the judgments were entered.    And on the 18th March 1859, the court made an order : " That the judgments shall not affect, or be a lien or en-cumbrance upon the separate estate, real or personal, of John Pflieger or Sallie A. Hess, two of the members of the firm of Pflieger, Hess & Nevin, nor upon the partnership effects, real or personal, of the firm of Pflieger, Hess & Nevin, but only upon the separate and individual real and personal estate of John A. Nevin, who confessed the same."

On the 22d March 1859, certain real estate held by the mem-bers of the firm of Pflieger, Hess & Nevin, as tenants in common, was sold by the sheriff under an execution issued on a subsequent judgment against the firm, in favour of A. & P. Roberts ; and the net amount of the sales of Nevin's property was ascertained to be $2532.95½, which was claimed by the York Bank under their judgment, and also by George Welsh and others, the plaintiffs in the judgment of the 17th June 1858.

Before the auditor appointed to report distribution of the fund in court, it was proved that George Welsh, and the other plain-tiffs in the judgment of the 17th June 1858, before they obtained their judgment, had actual notice that the York Bank had entered up their judgments, and the "Nevin" in the firm, against whom they were entered, was John A. Nevin, one of the defendants in the judgment of the 17th June.

The auditor awarded the fund in court to the judgment of the 17th June 1858, in favour of George Welsh and others ; and his report having been confirmed by the court, and distribution decreed accordingly, the York Bank took their appeal from the decree.

*Evans & Mayer*, for the appellants.—A lien is simply a hold upon property for the security of a claim : Conard v. Atlantic In-surance Company, 1 *Pet.* 443 ; Cover v. Black, 1 *Barr* 494 ; Reed's Appeal, 1 *Harris* 479 ; Moyer v. Hinman, 3 *Kern.* 190. In Pennsylvania, liens must generally be of record, because secret liens are not favoured.    A bond for unpaid purchase-money is not a lien : Kauffelt v. Bower, 7 *S. & R.* 64 ; but if the conveyance be made subject to the payment of the bond, the latter becomes a lien, although the conveyance be not on record : Stewartson v. Watts, 8 *Watts* 392 ; 1 *W. & S.* 142 ; Bury v. Sieber, 5 *Barr* 431 ; Darlington's Appropriation, 1 *Harris* 430.    The law, there-fore, evidently does not regard the *mode* of notice, but the *fact* of notice, in requiring that liens shall be of record.

Judgments are liens of record.    Their rights of payment are determined by the order of their entry, as subsequent creditors

can only contest them on the ground of fraud: Hauer's Appeal, 5 *W. & S.* 473; Roemer v. Denig, 6 *Harris* 482. But as judgments are scattered through numerous dockets, some provision was necessary to facilitate the finding of them; and the Act of 1827, requiring them to be entered on the judgment index, was evidently passed for that purpose: Bear v. Patterson, 3 *W. & S.* 237; Mann's Appeal, 1 *Barr* 24. The judgment docket is made the instrument of constructive notice to all persons of the judgments entered in it: Hance's Appeal, 1 *Barr* 408; Mather v. McMichael, 1 *Harris* 303. But constructive notice is in its nature no more than evidence of notice; and actual notice must be of equal effect upon the rights of parties: Billington v. Welsh, 5 *Binn.* 134; Garrard v. Pittsburg and Connellsville Railroad Company, 5 *Casey* 158; *Story's Eq. Jur.*, § 399.

*Keesey* and *Stevens*, for the appellees.—A strict compliance with the requirements of the Act of 1827 is necessary in the entry of a judgment upon the judgment docket: Bear v. Patterson, 3 *W. & S.* 233; Mehaffy's Appeal, 7 *Id.* 200; Hance's Appeal, 1 *Barr* 408; Mann's Appeal, *Id.* 24; Wood v. Reynolds, 7 *W. & S.* 406; Ridgway's Appeal, 3 *Harris* 181; Cole v. Pety, 1 *Pennington* 60; Walton v. Vanderhoof, *Id.* 73; Gandal v. Finn, 23 *Barb.* 652; Davis v. Morris, 21 *Id.* 152; Jones's Estate, 3 *Casey* 336. The omission to set forth the defendants' Christian names upon the judgment docket, was not a matter that was capable of being supplied by parol evidence: McKinney v. Mehaffey, 7 *W. & S.* 277; Webster's Case, 7 *Greenl.* 432; State v. Squire, 10 *N. H.* 188; Jourdan v. Jourdan, 9 *S. & R.* 274; Barnet v. Barnet, 15 *Id.* 73.

The opinion of the court was delivered by

WOODWARD, J.—It did not appear that Nevin had authority from his partners to bind them by a confession of judgment, and therefore the two judgments he gave to the York Bank against the firm of Pflieger, Hess & Nevin, were properly set aside as to Pflieger and Hess. But they bound him, Nevin. That a judgment confessed by one partner in the firm's name is good as between him and the creditor, though void as to the copartners, has been often ruled, and was distinctly recognised in Ridgway's Appeal, 3 *Harris* 182, the case chiefly relied on by the appellees in this dispute.

Good for what? Good not only as evidence of the amount of his indebtedness, but good also as a lien upon his land. Nevin's judgments were confessed in a court of record, and as such became liens on whatever interest in real estate he held within the county.

But they were not properly entered in the judgment docket. Though indexed under the initial letter of each member of the

firm, they were entered against the firm name without the Christian names of the respective partners. The entries in that docket are required by the Act of 29th March 1827, to "particularly state and set forth the names of the parties." The Christian names of the partners were essential to the designation of the individuals, and the omission of them in the judgment docket destroyed all the effect of the entry therein. But what is the effect of the judgment docket? Simply to give notice to purchasers, subsequent encumbrancers, and all others in interest. The judgment does not depend for its validity, as between the parties, upon its entry in the judgment docket. This docket forms no part of the rolls of the court, which constitute the true record. For many years after 1827, it was not kept in some counties at all, and yet there can be no doubt valid judgments were entered up in such counties. It was established for the same purposes for which records of deeds, mortgages, and wills were provided;—to be a notice to purchasers and others acquiring rights in real estate. And hence a defective entry in the judgment docket simply fails to be such a notice. This was what was decided in Ridgway's Appeal, 3 *Harris* 177.

But suppose the party entitled to have notice from the judgment docket receives it from some other source, is he bound by it? He *is* not bound to inquire or look elsewhere, and is not to be affected with constructive notice unless the entry in the judgment docket conform to the requisitions of the law; but if the party holding a valid judgment, which he has failed to have docketed according to law, bring home full notice of it to a subsequent encumbrancer, before his rights attach, has not all been done which the judgment docket was invented to accomplish?

The proofs were full and clear that the appellees had notice of the judgments of the bank against Nevin; and the auditor reports that "prior to taking their judgment of 17th June 1858, the several plaintiffs therein had actual knowledge of the fact that the Nevin in the firm name of Pflieger, Hess & Nevin was John A. Nevin; and of the fact that the said firm had given judgments to the York Bank, which were entered of record, being the judgments above mentioned of the York Bank."

What more could the appellees ask? What more could the judgment docket have done for them? Nevin's judgments were well confessed: Grier & Co. *v.* Hood, 1 *Casey* 430. As between him and the bank, the judgments bound his real estate. The appellees had notice that his real estate was bound by these judgments, before their own were entered. Then to postpone the prior judgments and to let in the subsequent, is to say, that actual notice shall not stand instead of the constructive notice which the law provides for by means of the judgment docket. We think this ought not to be said. We think that a judgment-creditor

who gives actual notice of his rights, cannot be deprived of them because he did not also exhibit them on the judgment docket. It was the bank's duty, to see that their judgments were properly docketed; but failing in this, the more onerous duty was upon them to bring home notice to the parties to be affected. This duty they performed to the satisfaction of the auditor, and thus maintained their rights.

But the same objection is urged here as in Jones's Estate, 3 *Casey* 338, that this is proving a lien by parol. We reply as we did there, that the lien comes of the record. It is because the bank obtained judgments according to law, in a court of record, that they acquired liens on Nevin's real estate. Not because of anything proved by parol. These judgments, say the appellees, should be postponed to later ones, because they were not docketed so as to give the notice provided by law. The parol testimony comes in to answer this objection. It was properly received for this purpose. Notice is a fact, as provable by parol in this instance, as in any other; for the statute which enjoins constructive notice, does not forbid parol proof of notice, which is actual and direct.

> And now, to wit, 26th June 1860, this cause having been fully heard and considered, it is ordered and adjudged that the decree of the Court of Common Pleas of the county of York be reversed and set aside so far as relates to the sum of $2532.95½ of the fund in court; and it is here decreed, that the said sum be paid to the York Bank on their judgment No. 150 of January Term 1858, and that the costs of this appeal be paid by the appellees.