## Butts v. Cruttenden.

*Lien—Judgment defectively indexed—Notice.*

If a subsequent incumbrancer have actual notice of a judgment defec-
tively indexed before his rights attach, it is equivalent to the constructive
notice required to be given by the judgment docket.

*Notice—Proof of equivalent knowledge.*

Proof that brings home knowledge of a fact to a person, if he will but
use his senses and reasoning faculties, is in a great variety of cases held
to be sufficient to affect him with notice.

*Judgment index— Omission of middle letter—Effect of notice—Junior lien.*

Where a debtor is indifferently known as William and William J., obli-
gations being given by the debtor both with and without the middle letter
" J.," and when the conduct of a mortgagee indicates that he was not misled
by a prior judgment given and recorded without such middle letter, such
judgment will not be denied participation in proceeds of sheriff's sale of
land standing in the name of William J.

Argued Feb. 14, 1900. Appeal, No. 15, Feb. T., 1900, by plaintiff, in suit of Dyer J. Butts, executor of Jean Allen, deceased, against William J. Cruttenden, from decree of C. P. Tioga Co., Sept. T., 1898, No. 489, on distribution. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by RICE, P. J.

Exceptions to decree in distribution by the court below of money raised by sheriff's sale of real estate of William J. Cruttenden. Before MITCHELL, J.

It appears from the findings of fact by the court below that William Cruttenden on June 9, 1875, confessed judgment to Henry B. Card for $413.40, which note was. entered of record on November 8, 1894. Execution was subsequently issued on the Card judgment and an application made to stay and set aside the sale because the sheriff had not properly advertised the real estate by posting notice on the land to be sold as required by law.

At the hearing of this motion Dyer J. Butts was present and the court stayed and set aside the sale so advertised by the sheriff and the land was not sold. Subsequently the land was sold to Dyer J. Butts for the sum of $975.

The court also found that William J. Cruttenden, the same person, who, as William Cruttenden, had confessed the· Card judgment, executed a mortgage in favor of said Dyer J. Butts for the sum of $1,700.

The bond accompanying the mortgage having been entered up and execution issued thereon, the land in question was sold under the execution of Card and Butts to the said Dyer J. Butts for the sum of $975. The court found definitely that William Cruttenden, in the Card judgment, and William J. Cruttenden the mortgagor in the Dyer J. Butts executor's mortgage, is one and the same person. That Butts resided in the neighborhood and had known William Cruttenden for about forty years and that Cruttenden was known in the community where he resided, and by men with whom he did business both as William Cruttenden and William J. Cruttenden.

The court below made, inter alia, the following specific findings of fact:

6. That on November, 1898, the defendant in said execu-

tion, William Cruttenden, made an application to the court of common pleas of Tioga county, to stay and set aside the sale so advertised in pursuance of said execution by the sheriff, because the sheriff had not properly advertised the real estate by posting notice on the land to be sold as required by law.

7. That at the hearing had on said rule by the court of common pleas of Tioga county in open court, the defendant in said execution, William Cruttenden, swore that he was the defendant in the Henry B. Card judgment, and Dyer J. Butts was present at the hearing.

8. The court stayed and set aside the sale so advertised by the sheriff and the land was not sold.

9. On December 6, 1898, the executors of Henry B. Card caused a writ of alias vend. ex. to be issued out of the court of common pleas of Tioga county, and the land heretofore seized in execution situate in Richmond township, aforesaid, was advertised to be sold by the sheriff of Tioga county, at the courthouse in the borough of Wellsboro, on January 23, 1899, and at that time was sold to Dyer J. Butts for the sum of $975.

12. Dyer J. Butts, executor, caused judgment to be entered upon the bond accompanying the above stated mortgage against William J. Cruttenden and Phœbe Cruttenden on September 2, 1898, to No. 489, September term of 1898, for the sum of $1,700, and caused an execution to be issued thereon in pursuance of•which the sheriff of Tioga county levied upon the 150 acres of land situate in Richmond township, Tioga county, Pa.; that subsequent on September 26, 1898, said Dyer J. Butts, executor, caused a writ of vend. ex. to be issued out of the court of common pleas of Tioga county, in pursuance of which the sheriff of Tioga county advertised the said lot of land to be sold at the courthouse in the borough of Wellsboro, on November 27, 1898, but said execution was stayed by the counsel of the said Dyer J. Butts, executor; that subsequently, on December 8, 1898, said Dyer J. Butts, executor, caused a writ of alias vend. ex. to be issued out of the court of common pleas of Tioga county, by virtue of which the sheriff of Tioga county advertised said lot of land of 150 acres to be sold at the courthouse in the borough of Wellsboro, and the same was sold in pursuance of said writ and on the execution of the executors of Henry B. Card, aforesaid, against William Cruttenden, to Dyer J. Butts, for the sum of $975.

18. Dyer J. Butts resided in the borough of Mansfield about two and one half miles from the farm where William Cruttenden lived and had known the said William Cruttenden for about forty years.

19. The said Cruttenden was known in the community where he resided and by men with whom he did business, both as "William Cruttenden" and "William J. Cruttenden;" that he transacted business under both names; that he gave a large number of judgment notes which were entered in the court of common pleas of Tioga county, some of which were signed by him as, "William Cruttenden," and some as "William J. Cruttenden;" that said judgments and notes were paid by one and the same person, the William J. Cruttenden who lived on the two and one half acres willed "William Cruttenden" and Phœbe Cruttenden by Lewis Cruttenden, on the east of the land sold by the sheriff January 23, 1899, the proceeds of which is in court for distribution.

The court below entered the following decree:

[Sur distribution by the court of the money raised by sheriff's sale of defendant's lands, July 17, 1899. This matter was heard on the 27th and 28th of April last, and the evidence heard is written out and filed of record. The plaintiffs in this case claim payment in full for balance of their writ unpaid with interest and costs, and are resisted in this by Dyer J. Butts, executor of Jean Allen, who claims the whole fund in court on his judgment to No. 489, September term, 1898, against William J. Cruttenden. The lien of the Card judgment is prior in time to that of Butts, but the former was entered and indexed only against William Cruttenden, while the latter was entered and indexed against William J. Cruttenden, and the lands sold were held in the name of William J. Cruttenden, though they were sold by the sheriff on writs in both cases, as lands of William and William J. Cruttenden. The Card judgment was entered upon a judgment note, while that of Butts was entered upon a bond to secure payment of which there was a mortgage, of date later than that of the entry of the Card judgment, by which these lands were mortgaged to Butts as executor of Jean Allen by William J. Cruttenden and wife. There is no doubt, under the proof, that William Cruttenden and William J. Cruttenden are one and the same person, nor

is there any doubt, under the proof, that Butts knew of the existence of the Card judgment when he took this bond and mortgage against William J. Cruttenden; but it was not proven that Butts knew that William and William J. Cruttenden were one and the same person at the time he took this bond and mortgage. But a large amount of evidence was offered and admitted pro forma (in order to get the whole case before the court), the effect of which, it is contended by counsel for the executors of Henry B. Card, is to charge Butts with knowledge of the identity of William and William J. Cruttenden at that time, or with knowledge of such facts, at that time, as made it his duty as a prudent man to ascertain that fact before he made the loan on the bond and mortgage that he took from William J. Cruttenden and wife.

If Butts had had no knowledge of the Card judgment before he made the loan, following the well-settled law in this state, we should hold that he was not bound to search for liens against William Cruttenden and that, therefore, the money for distribution should be first applied upon his writ; but while we know of no case precisely to this effect, we feel sure that, in this case, in justice and good conscience, we must hold that, under the facts and circumstances clearly proven, Mr. Butts, as a prudent man, was bound to know the fact that the William Cruttenden, defendant in the Card judgment, was the same person from whom he took the bond and mortgage in name of William J. Cruttenden, and therefore that his previous knowledge of the Card judgment was notice thereof to him as a valid and subsisting lien against the lands of William J. Cruttenden at the time when he took the bond and mortgage in question before us. He knew of the Card judgment and made inquiry about it repeatedly, and with the knowledge he had of it, and the anxiety his inquiries exhibit, surely we think it was his duty, under the facts and circumstances proven, as a reasonably prudent man, to have gone to the owner of the judgment to inquire about it and that he should not have rested content, as his conduct appears to show, with inquiries made of the defendant and his son.

Therefore we find the facts in this case as they are set forth in the request made by counsel for the executors of Henry B. Card, deceased, filed herewith and made a part hereof, and we

also affirm the conclusions of law as stated in their request therefor, also hereto attached and made part hereof.

Let the money in court (after payment of the prothonotary's poundage) be first applied in payment in full of the balance of the Card judgment with interest and costs, and the balance thereof upon the judgment of Dyer J. Butts, executor of Jean Allen, v. Williams J. Cruttenden, No. 489, September term, 1898.] [31]

Exceptions were filed to the decree of the court below which were subsequently dismissed. Dyer J. Butts, executor, appealed.

*Error assigned* among others was (31) to the entry of the decree, reciting same.

*Harvey B. Leach* and *Horace B. Packer*, with them *Norman H. Ryan*, for appellant.—The mortgagee was entitled to record notice of the judgment, and no part of it could rest in parol: Zimmerman v. Briggans, 5 W. 186.

And it was the plaintiff's duty to see that his judgment was rightly entered, so as to give notice to purchasers and mortgagees; and the middle initial of the defendant's name is essential, when its omission may deceive a purchaser or mortgagee: Wood v. Reynolds, 7 W. & S. 406; Heil's App., 40 Pa. 453; Hutchinson's App., 92 Pa. 186; Crouse v. Murphy, 140 Pa. 335.

*H. T. Ames*, with him *Walter Sherwood* and *Edward H. Owlet*, for appellee.

OPINION BY RICE, P. J., July 26, 1900:

It is an established fact that the Cruttenden who signed the judgment note as William Cruttenden on which the Card judgment was entered in 1894, was the same person who executed the mortgage in favor of Dyer J. Butts, executor, in 1896. The further facts are established that this person, who lived near, and was well known to the mortgagor, was known in the community where he resided and by men with whom he did business both as "William Cruttenden" and "William J. Crut-

tenden;" that he transacted business under both names; that he gave a large number of judgment notes which were entered of record in Tioga county, some of which were signed by him as " William Cruttenden" and some as " William J. Cruttenden;" and that these judgments and notes were paid by one and the same person, the person who gave the Card judgment and who executed the Butts mortgage. (See eighteenth and nineteenth findings of facts.) Whether the appellant, Dyer J. Butts, had actual knowledge of these facts or not, they were relevant to the issue. Standing alone they might not be sufficient to affect him with notice of a judgment docketed against William Cruttenden unless· that was his full name, or knowledge of the facts above stated was brought home to the appellant. Nevertheless in establishing the true name of the debtor, it was competent to show by what name he was known in the community and what he used and otherwise recognized as his true name : Laflin and Rand Co. v. Steytler, 146 Pa. 434, 442 and notes thereto in 14 L. R. A. 690 ; 2 Bouv. L. Dict. (Rawle) 463 ; Jones's Estate, 27 Pa. 336. A fortiori the evidence was admissible in the absence of proof that " William J." was the name given him by his parents. Further, it is an admitted fact that Dyer J. Butts had actual knowledge of the Card judgment against " William Cruttenden" when he took his mortgage. If he had actual knowledge that the defendant in that judgment was the person from whom he was about to take the mortgage, or if he had such knowledge as made inquiry a duty, was he not affected with notice of the Card judgment as fully as if in indexing it the middle letter " J " had been included? As to the first branch of this proposition there is no room for discussion. If a subsequent incumbrancer have actual notice of a judgment defectively indexed before his rights attach, it is equivalent to the constructive notice required to be given by the judgment docket : The York Bank's Appeal, 36 Pa. 458 ; Smith's Appeal, 47 Pa. 128 ; Speer v. Evans, 47 Pa. 141 ; Fulton's Estate, 51 Pa. 204 ; McCray v. Clark, 82 Pa. 457, 461 ; Hamilton's Appeal, 103 Pa. 368. If, to bring the case within this principle, it was necessary to show that Butts, the subsequent incumbrancer, was told in so many words that the defendant in the Card judgment was the same person who was negotiating a loan from him, it must be conceded that the proofs introduced by the

appellee to affect him with notice of the lien were insufficient. We are not convinced, however, that such proof was required. Proof that brings home knowledge of a fact to a person, if he will but use his senses and reasoning faculties, is in a great variety of cases held to be sufficient to affect him with notice. As long as it is the law that notice of liens defectively docketed is provable by parol (York Bank's Appeal), why should this common sense principle be wholly ignored in disputes between prior and subsequent lien creditors? There is no evidence that the middle letter "J" was part of the baptismal name of the debtor; nor is there any evidence that he adopted it as an essential part of the designation of himself. It is true he used it on some occasion, but on others, where equally important for his identification, he did not. This, then, is not the case of a note signed with the admittedly true name of the obligor but docketed and indexed with the middle letter left out, or with another letter substituted. In this particular the case differs from Wood v. Reynolds, 7 W. & S. 406, Hutchinson's Appeal, 92 Pa. 186, and Massey v. Noon, 1 Pa. Superior Ct. 198. But it is urged that the case is ruled by Crouse v. Murphy, 140 Pa. 335, which overruled Jenny v. Zehnder, 101 Pa. 296. We think, however, that the former case is plainly distinguishable from the case at bar. That was a case stated in which it was distinctly admitted that the full name of the debtor was Daniel J. Murphy and that his written and recorded title to the land in question was taken and held in that name. It was held that a judgment against him by the name of "Daniel Murphy" upon a note signed in the same way did not bind the land as against a bona fide purchaser for value, without notice, who had made search for judgment against "Daniel J. Murphy." It appeared in the present case that at the date of the Butts mortgage, Cruttenden held title in fee to a tract of about 150 acres (the tract from which by the sheriff's sale the fund in question was realized) and a life estate in a tract of two and one half acres bounding the larger tract on the east. He lived on the smaller tract. The name of the grantee as given in the deed for the larger tract was "William J. Cruttenden," but in the same deed the land was described as bounded "on the east by the lands of . . . . William Cruttenden" and others, this reference being to the smaller tract on which Cruttenden lived, and which he held at the time under

a devise contained in his father's will " to my son William and his wife . . . . the premises . . . . where they now reside containing about two and a half acres." The appellant's mortgage included both these tracts and describes the former in precisely the same way it was described in the deed to Cruttenden. As properly found by the court below, in taking the mortgage he treated the names " William Cruttenden " and " William J. Cruttenden " as designating the same person. The written and recorded evidence of his title furnished no unequivocal evidence that the latter was his true name. Leaving the language of the will out of consideration as not having any significance and confining attention to the deed to which a purchaser or incumbrancer would naturally look to ascertain how and in what name the land was held, it is seen that in one part he is spoken of as " William J. Cruttenden," and in another place as " William Cruttenden." The appellant knew that these two names indicated one and the same person, the person with whom he was about to deal. As was said in Crouse v. Murphy whoever dealt with him on the credit of his real estate was bound to know what appeared in his recorded title. Having knowledge that there was an unsatisfied judgment against " William Cruttenden " we do not think the appellant was justified in acting on the assumption that that was not the " William Cruttenden " mentioned in the deed as the owner of one of the tracts upon which he was about to take a mortgage. As pointed out in the opinion of the court below, he evidently felt it was his duty to make inquiry, but unfortunately, instead of inquiring of the plaintiff in the judgment, who was well known and near at hand, he contented himself with the inquiries made of the defendant and his son. We might rest the case here. We do not think any prudent man ought to have been misled by the state of the record. But it will not be out of place to show by his subsequent conduct that the appellant was not in fact misled.

The sheriff's sale of the land in question was had on writs issued on the Card judgment against " William Cruttenden " and on the judgment entered against " William J. Cruttenden " on the bond accompanying the appellant's mortgage. (See ninth and twelfth findings of facts.) Long before this the appellant knew that the defendant in the former judgment and his mortgagor were one and the same person (see sixth and

seventh findings of facts), and, of course, knew that the owners of that judgment asserted it to be a lien on the land. J. M. Clark, a responsible person who held a judgment against "William Cruttenden" was prepared to bid, and the appellent knew that he intended to bid enough to cover the Card judgment and the appellant's mortgage, his own judgment being a later lien. With knowledge of the foregoing facts, the appellant, in effect, silenced Clark by purchasing his judgment, and as a result the appellant and the plaintiffs in the Card judgment were the only bidders. The latter stopped bidding when a price was reached sufficient to cover their own judgment, assuming it to be a prior lien, and the property was struck down to the appellant for $975, when according to the findings of the court below, it was worth from $2,500 to $2,700. Not until after the deed had been acknowledged and delivered and it was too late to set aside the sale did the appellant give any notice of an intention to contest the priority in lien of the Card judgment. It is urged with much force, and the court below found, that under all the circumstances it was his duty to give such notice earlier, and, therefore, that he is estopped by his silence. " The distinction . . . . between the cases where acts or declarations of encouragement are necessary to create an estoppel, and those where mere silence or acquiescence will be sufficient, is one of principle, and each case as it arises must be assigned to one or the other class, according to its circumstances, the chief of which is knowledge or ignorance of the party's own rights and the other's action. Encouragement is necessary where the party is ignorant; but knowledge creates the duty to speak, and where that exists, silence is enough to estop: " Logan v. Gardner, 136 Pa. 588. It does not affirmatively appear that the appellant had knowledge of any fact relative to his right to claim priority that the appellee had not; and as they stood on an equality, so far as knowledge of the facts was concerned, each having levied upon the same property, we cannot say that either owed the other the duty to declare that he would claim priority in the distribution. Therefore, applying the principle enunciated in the last cited case we cannot say that either was estopped. But although the facts above recited are not sufficient to create an estoppel, they tend at least to show that when the appellant took his mortgage he was not misled to his injury by the state of the record.

449, (1900).]                Opinion of the Court.

In view of the foregoing conclusions, it does not seem necessary to take up and discuss separately the thirty-one assignments of error. We have examined them all carefully, and notwithstanding the very earnest and able argument of the appellant's counsel, we are not convinced that there is any error in the findings of fact or conclusions of law for which the decree should be reversed.

The decree is affirmed and the appeal dismissed at the costs of the appellant.