## The Ohio-Penna. Joint Stock Land Bk. of Cleveland, Appellant, v. Miller.

240

Argued April 18, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*R. E. Best* of *Smith, Best & Horn,* and with him *Barnhart & Ankney,* for appellant.

*Howard H. Whitehead* of *Crowell & Whitehead,* for Safe Deposit and Trust Company.

*H. E. Marker* of *Marker & Rial,* and with him *Paul M. Robinson* and *John A. Walls,* for appellee.

OPINION BY PARKER, J., October 10, 1932:

The questions presented to us arose on distribution of the proceeds of a sheriff's sale of real estate and involve a question of priority as between a mortgage and judgments, indexed, in the case of the mortgage, "Catharine E. Miller," and in the case of the judgments, "Catharine E. Miller, alias dictus Kate E. Miller."

The facts are not in dispute and for the most part were found by the auditor. Henry Stroble devised to his daughter a farm in Westmoreland County, and the pertinent part of the will is as follows: "I hereby give, devise and bequeath my farm in Hempfield Township, Westmoreland County, Pennsylvania ...... containing one hundred acres, more or less, to my daughter Kate E. Miller, her heirs and assigns forever, this being the farm on which she now resides." On June 24, 1927, a mortgage on this farm, dated May 1, 1927, in favor of the Ohio-Pennsylvania Stock Land Bank of Cleveland, the appellant, signed "Catharine E. Miller" and "Jonas P. Miller" (her husband), was acknowledged and recorded. The mortgage contained the following recital: "Being the same tract of land title to which became vested in Catharine (Kate) E. Miller, by last will and testament of her father, Henry Stroble, deceased, said will being recorded in the register's office of Westmoreland County, Pa., in will book, No. 23, page 367." It was indexed under the name "Catharine E. Miller," no reference being made in the index to "Kate E. Miller." On December 9, 1930, judgment was entered on the bond, which the mortgage was given to secure, the defendant in the judgment being named as "Catharine E. Miller, alias dictus Kate E. Miller." On January 10, 1927, prior to the recording of the mortgage, a judgment was entered in

favor of J. H. Cook and against "Catharine E. Miller, alias dictus Kate E. Miller." After the recording of the mortgage and before the entry of the bond which accompanied the mortgage, three additional judgments were entered in all of which the defendant was designated as "Catharine E. (or Catharine Elizabeth) Miller, alias dictus Kate E. Miller," and the judgments were indexed under both names.

A fi. fa. was issued on the bond accompanying the mortgage, sale was made to appellant, and an auditor appointed to make distribution of the proceeds. Claim for taxes was made and it is conceded that these taxes and the Cook judgment have first claim upon the fund. The controversy is between the owner of the mortgage and the owners of the three judgments. The auditor awarded the balance to the mortgagee and the lower court sustained exceptions to this award and appropriated the fund first to the payment of the three judgments entered after the mortgage was recorded and a small balance to the mortgage.

It appeared by the undisputed evidence that Catharine E. Miller and Kate E. Miller are one and the same person; that "Catharine E. Miller" was the correct name of the obligor; that she was baptized "Catharine" and after her marriage, many years before, always wrote her name in that way and was so known in the community in which she lived; but that she was familiarly called "Kate E. Miller" by her father and brothers. The appellee's claim that the indexing of the mortgage under the name "Catharine E. Miller" and the failure to note the alias dictus "Kate E. Miller" on the mortgage index caused the lien of the mortgage to be postponed to the liens of the judgments.

We are unable to agree with the contention of the appellant that because a judgment creditor prior to June 12, 1931, was not entitled to the protection of the recording acts as against an unrecorded conveyance,

delivered before the judgment was entered (Beman Thomas Co. v. White, 269 Pa. 261), it would follow that a judgment creditor could not claim against an unrecorded mortgage. The answer to this contention is that the Act of April 27, 1927, P. L. 440, which supplied the Act of May 28, 1815, P. L. 631, and the Act of March 28, 1820, P. L. 141, provides that a mortgage shall not be a lien until such mortgage has been recorded or left for record. "Notwithstanding the stringency of these acts, however, it has uniformly been held, that an unrecorded mortgage is good as against the mortgagor, or anyone claiming under him with notice of the mortgage": Mellon's App., 32 Pa. 121, 129.

We cannot agree with the position of the appellees that the question is to be considered as one involving the rights of bidders or a purchaser at a sheriff's sale. The case of Penna. Co. for Ins. v. Halpern, 273 Pa. 451, is typical of the cases relied upon. It was there held that a purchaser at a sheriff's sale is entitled to rely upon the record in determining whether the sale divested all liens or was made subject to liens. "At the sheriff's sale the same rule must apply equally to all bidders, the mortgagee as well as others, without regard to what their private information may be of the facts dehors the record": Reading v. Hopson, 90 Pa. 494, 497. An examination of these cases and many others referred to by appellees and noted in the digests discloses that each time that this rule has been applied it had to do with determining whether a sheriff's sale had been made so as to divest all liens. If the rule is to be construed as the appellees contend, then a consummated sale would settle all disputes as to validity and amount of liens of record. We do not so understand the rule. It is as bidders or purchasers that they are to be placed upon the same footing. In the instant case, the purchaser and other bidders were entitled to know the exact amount to be paid for the property and

likewise to know when they bid whether they were taking the property subject to a lien or liens that were not divested and to depend on the record for the information regardless of what the true facts might be. "The rule is held so firmly that an unsatisfied judgment, although paid, operates to discharge the lien of what would otherwise be a first mortgage": Colonial Trust Co. v. Lincoln Drive Aprt. Corp., 299 Pa. 117, 123. It could scarcely be contended that on distribution an owner of a judgment which had been paid, but not satisfied, could collect again the amount of his judgment because that was the way the record stood at the time of the sale. The rule is for the protection of purchasers and bidders at sheriff's sales and has not to do with claims arising among the various creditors as to the disposition of the proceeds. The controversy must, therefore, be disposed of on other grounds.

The only question involved is one of notice and arises out of the manner in which the obligations were signed and indexed. As is pointed out by the lower court, the Act of March 18, 1875, P. L. 32, made defective indexing fatal to a mortgage as against subsequent purchasers and mortgagees, the same as defective recording. See Prouty v. Marshall, 225 Pa. 570. It is to be noted in passing that the act applies only to deeds and mortgages and is not concerned with wills. Were the owners of the notes on which judgments were entered, when they came to the office of the prothonotary for the purpose of having judgment entered, bound to take notice of the prior recorded and indexed mortgage, executed by the same person as their obligor, but signed and indexed under her true name and not under the familiar or nickname used by her father in devising the farm to her? Without hesitation we hold that this question must be answered in the affirmative. The owners of the judgments were clearly guilty of an oversight in failing to take notice of this mortgage. Not only were their own obligations signed "Catharine E.

Miller," the name by which she was baptized and known, and under which she transacted business, but each of the three judgment creditors admitted upon the record that Catharine E. Miller was known to them as Kate E. Miller by causing their judgments to be entered and indexed against both names. It surely could not be said in the face of such facts that they exercised ordinary prudence, if they did not search the records under the name of "Catharine E." and if they did make such search, they learned of the mortgage.

The auditor has found as matters of fact that the judgment creditors had actual knowledge that Catharine E. Miller and Kate E. Miller were one and the same person,—that is, that they had actual notice of this state of facts; consequently, an examination of the indexes in light of this knowledge would have disclosed the mortgage. The index constitutes constructive notice of the existence of the mortgage and they are bound by it. The appellant is entitled to the balance of the fund after payment of the taxes and the Cook judgment.

The order of the lower court is reversed at the cost of the appellees and distribution is directed to be made in accordance with this opinion.