## Everett Bank, Appellant, *v.* Hall.

Argued October 26, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*B. F. Madore,* for appellant.

*Alvin L. Little,* for appellee.

OPINION BY PARKER, J., December 14, 1939:

The questions presented to us on this appeal arose on a distribution of the proceeds of a sheriff's sale of real estate and involve a question of priority as between two judgments.

On December 17, 1936, David Blair Hall was the owner of two parcels of real estate acquired by deeds which had been recorded. In one deed the grantee was described as David Blair Hall and in the other as Blair Hall. On December 17, 1936, Simon Snyder caused a judgment in the amount of $600 to be entered by confession against D. B. Hall and the judgment was so indexed, and on September 3, 1937, the Everett Bank had a judgment entered by confession in the amount of $2,594.78 against D. B. Hall and it was likewise so indexed. The land standing in the name of David Blair Hall was sold at sheriff's sale but the proceeds were not sufficient to reach either judgment.

On October 20, 1937, the bank issued a sci. fa. on its judgment, reciting in the praecipe that D. B. Hall was Blair Hall. Judgment was taken on the sci. fa. on November 27, 1937, against "D. B. Hall, who is Blair Hall" and the judgment was indexed in both names. By writ of vend. ex. upon the bank's judgment the real estate standing in the name of Blair Hall was sold by

the sheriff to the cashier of the Everett Bank on February 19, 1938, for $1,200, leaving a balance of $1,035.77 for distribution after payment of costs. The sheriff appropriated the entire balance toward the payment of the bank's judgment, to the exclusion of the Snyder judgment. Exceptions to the sheriff's report of distribution were filed and an auditor was appointed. The auditor, after hearing and taking of testimony, found that the owner of the Snyder judgment was entitled to priority. On further exceptions the court of common pleas approved the distribution as made by the auditor. We are of the opinion that the case was properly disposed of by the court below.

There is not any question of identity involved or any question that David Blair Hall, D. B. Hall, and Blair Hall were names used by one and the same person and that the real estate involved was owned by that person. It also appears from the testimony that the bank, through its officers and its attorney acting at the time in its behalf with respect to the very matter in controversy, knew these facts and that the bank had itself dealt with David Blair Hall as D. B. Hall. In fact the note upon which the bank's judgment was confessed was signed D. B. Hall. Both Simon Snyder and representatives of the bank were present at the sheriff's sale; Snyder, or someone on his behalf, bid at the sale and the bank's cashier was the purchaser at the sale. We also call attention to the obvious fact that the judgment upon which the real estate was sold was one in which "D. B. Hall, known as Blair Hall" was the defendant and it is the proceeds of a sale made on a judgment against D. B. Hall with which we are concerned.

While we are of the opinion that there were sufficient facts of record to sustain the conclusion of the court below without the aid of any testimony, it seems clear to us that such testimony was competent and relevant and that it only emphasizes the correctness of the conclusion. The defendant named in the judgment as

originally entered was D. B. Hall and in the judgment as revived it was still D. B. Hall, to which was added notice that D. B. Hall is Blair Hall. The real estate involved was seized on that judgment and sold. That sale conveyed the interest of D. B. Hall in such real estate regardless of the name in which the title stood, and it was the proceeds of the sale of such interest that were for distribution. If the title had stood in the name of Hall's wife, the sale would have carried such interest as D. B. Hall had in that particular parcel of land. Both plaintiffs are claiming by virtue of judgments against D. B. Hall, but Snyder's judgment was prior in time.

At the sale all bidders were in the same position and were advised by the execution creditor who caused the property to be sold that Blair Hall and D. B. Hall were the same person. It was the duty of bidders or purchasers to look at the writ for authority for the sale and there all were advised that D. B. Hall was Blair Hall. See *Mahler's Appeal,* 38 Pa. 220.

The testimony received by the auditor was competent and relevant. Much confusion will be eliminated if we keep in mind that we are concerned here with a pure question of distribution between creditors similarly situated and not with a question as to whether the lien of a judgment was divested by a sale. We endeavored to explain this distinction in *Ohio-Pa. Joint Ld. Bk. v. Miller,* 107 Pa. Superior Ct. 239, 243, 162 A. 328, but at the expense of repetition we will make an effort to further clarify the situation. It is of the utmost importance that bidders at sheriff's sale shall understand what they are buying, or at least that all shall bid upon the same basis, particularly as to whether the sale discharges all liens. Consequently, at a sheriff's sale the bidders and purchasers are entitled to rely upon the record in determining whether the sale divested all liens or was made subject to liens "without regard to what their private information may be of facts dehors the

record": *Reading v. Hopson,* 90 Pa. 494, 497. A simple illustration will demonstrate that the rule does not have the same force or application where the sole question is one of distribution as among judgment creditors. Where a sale is made on a judgment junior to a mortgage "the rule is held so firmly that an unsatisfied judgment [prior to the mortgage], although paid, operates to discharge the lien of what would otherwise be a first mortgage": *Colonial Trust Co. v. Lincoln Drive Apts. Corp.,* 299 Pa. 117, 123, 149 A. 165; *Ohio-Pa. Joint Stock Ld. Bk. v. Miller,* supra, p. 244. This is in the interest of equality in bidding. Would anyone even suggest that on a question of distribution arising later out of that same sale it would not be competent to show by extraneous testimony that the judgment was in fact paid?

But the appellant contends that where one extends credit to another and secures himself by entering a judgment, he is entitled to rely upon the record as he finds it and that it is the duty of another judgment creditor to see that his judgment is entered against the proper person and properly indexed. In *Hutchinson's Appeal,* 92 Pa. 186, 187, the principle is thus stated: "The latter must be presumed to have searched for prior liens before giving credit to the defendant, and whether they did or not, the rule which requires the judgment-index to give accurate information cannot be departed from without great danger. It is always the duty of the plaintiff to see that his judgment is correctly entered on the index." This does not aid the appellant bank for not only did it know that Blair Hall and D. B. Hall were the same person and that he had transacted business as D. B. Hall and that his true name was David Blair Hall, but it actually did business with him as D. B. Hall. Certainly actual notice, if established, as it is here, is just as binding on the bank as a constructive notice. It therefore became the duty of the bank, if it decided to extend credit on the strength

of the judgment which it was about to take, to look for prior judgments against D. B. Hall.

What we have heretofore said with reference to equality in bidding is a further reason for sustaining this judgment. It cannot be doubted that a sale can be made discharged of a first mortgage notwithstanding the statute where the parties consent to such arrangement and due notice thereof is given at the sale. The books are full of cases involving that principle. Now, when this sale was made the record disclosed that the property that was being sold was that of D. B. Hall, also known as Blair Hall, and all bidders and the purchasers were on an equality. Certainly the same rule should be applied on distribution.

The order of the court below is affirmed at the costs of the appellant.