South Side Bank and Trust Company, Appellant, *v.* Wright et al.

Argued March 2, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*T. A. Donahoe,* of *Donahoe & Helriegel,* with him *Carl Carey,* for appellant.

*Esdras F. Howell,* with him *Willard Henkleman, William J. Oliver* and *J. Haydyn Oliver,* for appellee.

OPINION BY KENWORTHEY, J., July 16, 1943:

This is an appeal by a mortgagee from an order of court awarding the proceeds of a sheriff's sale of realty to the holder of a judgment note. The question is: Which of the two contesting creditors had the prior lien?

The facts were submitted to the court by stipulation which, however, was not a case stated; we are, therefore, not precluded from referring to parts of the original record not in the stipulation. *Bryant v. McGowan,* 151 Pa. Superior Ct. 529, 30 A. (2d) 667.

In 1924 Catherine Reap died and, by will dated August 19, 1919, devised[1] the real estate in question to her daughter, Anna (Reap) Tuffy. The daughter had been married to a man named Tuffy, but in 1923—prior to her mother's death—married James Wright.

On May 6, 1929, the Wrights executed and delivered to appellant a bond and mortgage on the property. The mortgage, as to the wife, was recorded under the name 'Anna Reap Wright.' At the time it took the mortgage, appellant procured from the other named legatees in the will, whose legacies were a charge on the property, a release of lien of legacy in which they

---

[1] This initially was a vested remainder in fee following a life estate to the husband-father. The life tenant died shortly after the probate of the will.

acknowledged receipt from Anna Reap Tuffy Wright of their bequests under the will of Catherine Reap, "and release and discharge the real estate devised in said will to Anna Reap Tuffy, *now Anna Reap Wright,* from any lien or claim arising in any way out of said devise ......" This release of lien was recorded and indexed on May 8, 1929 in the Grantors' Deed Book in the names of 'Katherine Reap Jones, Monica Reap et al. and Stephen Reap et al.'

It is important at this point to note that a diligent search of the records pertaining to this real estate would have revealed three things: (1) The source of the title—the will—which devised the property to Anna (Reap) Tuffy; (2) the release of lien by the other legatees which recited that Anna Reap Tuffy had become Anna Reap Wright; and (3) the mortgage by Anna Reap Wright and her husband to appellant.

On March 25, 1930, appellee took Mrs. Wright's judgment note which, for some reason not explained, was executed, entered and recorded under the name 'Mrs. Anna Tuffy.' The judgment was revived in 1935; it was also revived in 1940 against 'Anna Wright' as well as against 'Anna Reap Tuffy.'

In 1937, the Wrights executed and delivered to appellant a second bond and mortgage which, like the first, was recorded in the name of 'Anna Reap Wright.' A part of the proceeds were used to pay off in full the debt secured by the first mortgage which, however, was not satisfied of record.

In 1941, appellant entered judgment on the bond accompanying the second mortgage, issued a writ of fi. fa., and had the property sold.

Putting aside, for the moment, the question of the effect of the acceptance by appellant of the payment of the first mortgage, it seems clear to us that the manner of recording the first mortgage, in view of the simultaneous recording of the release of lien of legacy, gave ample notice of its existence and that it was a lien

on the property. Appellee probably took Mrs. Wright's note in the name of Tuffy because the devise of the property had been in that name. But, if the will had been examined, it would have led to the release of lien of legacy, which would have revealed that the debtor was then Anna Reap Wright and the exercise of reasonable care would have put appellee on notice of appellant's first mortgage. Although there is nothing in the record to indicate that appellee actually knew it was dealing with Mrs. Wright, it had constructive notice of that fact and of the existence of the mortgage. See *Butts v. Cruttenden*, 14 Pa. Superior Ct. 449; *Ohio-Pennsylvania Joint Stock Land Bank v. Miller*, 107 Pa. Superior Ct. 239, 162 A. 328.

Although the first mortgage was not satisfied of record, appellant very properly concedes that the payment of it discharged the lien and that the contest is between appellee's judgment and the second mortgage. See *Weir v. Potter Trust & Mortgage Guarantee Co.*, 323 Pa. 212, 185 A. 630. But the effect of appellee's carelessness was not merely to subordinate its lien to the first mortgage; its judgment was no good as against the second mortgage which was subsequent to it if when appellant took the second mortgage its failure to discover the judgment was not attributable to lack of due care. *Jaczyszyn v. Paslawski*, 147 Pa. Superior Ct. 97, 24 A. (2d) 116; *Coral Gables, Inc. v. Kerr*, 334 Pa. 441, 6 A. (2d) 275. Should appellant, by the exercise of reasonable care, have discovered appellee's judgment? We think not. When appellant took the first mortgage in 1929, it exercised proper care in recording and indexing. At that time the owner of the property had been married to Wright for six years. When, eight years later and fourteen years after her marriage, it took her second mortgage, it would scarcely have occurred to it that in the intervening period she had given a judgment note in the name of Tuffy. Its failure to

search the records and to discover the judgment under that name was not attributable to its carelessness.

The order is reversed and the exception to the sheriff's distribution is dismissed, costs to be paid by appellee, Lackawanna Thrift and Loan Company.