JOHN CROUSE ET AL. v. DANIEL MURPHY ET AL.

APPEAL BY CHARLES ROGGENMOSER FROM THE COURT OF COM-
MON PLEAS NO. 2 OF PHILADELPHIA COUNTY.

Argued January 19, 1891—Decided March 2, 1891.
[To be reported.]

The real name of the owner of land being Daniel J. Murphy and the title
being held in that name, a judgment against him by the name of " Dan-
iel Murphy," upon a note signed in the same way, will not bind the
land as against a bona fide purchaser for value, without notice, who
had made search for judgments against Daniel J. Murphy : Wood v.
Reynolds, 7 W. & S. 406 ; Hutchinson's App., 92 Pa. 186, followed ;
Jenny v. Zehnder, 101 Pa. 296, discredited.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 42 July Term 1890, Sup. Ct.; court below, No. 527
March Term 1888, C. P. No. 2.

On February 1, 1889, a scire facias was issued at the suit of
John Crouse and Elizabeth Schwartz, trading as Crouse &
Schwartz, to revive against Daniel Murphy, defendant, and
Charles Roggenmoser, terre-tenant, a judgment for $1,000, en-
tered on April 27, 1888, in favor of the plaintiff and against
said Daniel Murphy.

The terre-tenant, Roggenmoser, having appeared and made
defence, a case stated was agreed upon showing the following
facts :

" Judgment was entered in this case on April 27, 1888, upon
a judgment note dated April 26, 1888, for $1,000, payable in
one day after date, etc., as appears of record. This note was
signed by the defendant by the name, 'Daniel Murphy.' At
the request of the prothonotary, a memorandum in pencil was
made, at the time of entering judgment, below the defendant's
signature to the note, in these words : 'Drover, 4120 Parrish
St.,' thereby indicating, according to the usage of the prothono-
tary's office, the occupation and residence of the defendant.
The place so indicated was then the defendant's residence.

Case Stated.

The said memorandum still appears upon said note. The judgment was duly entered on the judgment index of the court as against 'Daniel Murphy' and has remained as such unsatisfied, and no part of the same has been paid.

"The defendant had been a drover or dealer in live stock, in the stock yards in the city of Philadelphia, from about 1872 until 1888, and was known among his friends and transacted his business as simply 'Daniel Murphy' or 'Dan Murphy.' The plaintiffs knew him only by these names; they are dealers in live stock at said stock yards. He had for many years as his only business sign, a tin sign with the name 'D. Murphy,' which sign was displayed in a conspicuous place in said stock yards. He transacted his business through the stock yards, in giving and receiving orders of various kinds, in the name 'Dan'l Murphy' or 'Daniel Murphy;' and his accounts were kept in such names with his knowledge, by the book-keepers of the stock yard association through which he did business. He kept his bank account during the whole period from 1872 to 1888, and signed his checks in the name of 'Daniel Murphy.' The defendant's full name is Daniel Joseph Murphy, and he has been doing business in the city of Chicago in the name of Daniel J. Murphy since June, 1888.

"At the time of the entering of judgment, as above stated, the defendant owned certain real estate in the city of Philadelphia, situate at the southeast corner of Myrtle and Holly streets, which he had acquired by deed dated June 27, 1883, and recorded July 11, 1883, in . . . . . in which deed he was described as 'Daniel J. Murphy.' He gave a purchase money mortgage of the same date by the name 'Daniel J. Murphy,' and April 23, 1888, gave a second mortgage by the same name.

"By deed dated August 23, 1888, and recorded August 27, 1888 in . . . . . the defendant by the name 'Daniel J. Murphy' conveyed the above mentioned property to Charles Roggenmoser, the terre-tenant above named, for the consideration of $1,200, subject to the payment of the said purchase money mortgage of $3,500. The defendant, from the time of purchasing the said property until shortly before conveying the same as aforesaid, had occupied the same as his residence.

"At the time of his purchase, Charles Roggenmoser, the

Arguments.

terre-tenant above named, caused searches to be taken against
'Daniel J. Murphy,' but the plaintiffs' judgment was not
shown upon his search; he then made settlement, paid said
purchase money to said Murphy, or on his account, the said
deed was delivered, and he is in possession of the said premises.
He had no actual knowledge of the entering of the plaintiffs'
judgment, or that Murphy was known by any other name than
that by which he held the title and executed the deed. The
name of the defendant, during the time in question and for a
long time previous, appeared in the city directories of Phila-
delphia as 'Daniel J. Murphy,' but was not so inserted by
his authority. There were a number of other persons of the
name 'Daniel Murphy' residing in the city of Philadelphia
at the time of this transaction.

" The plaintiffs had no knowledge of the defendant using
the name 'Daniel J. Murphy' or taking title to property in
that name.

" If the court be of opinion that the plaintiffs are entitled to
recover as against the terre-tenant, judgment to be entered for
plaintiffs for one thousand dollars, with interest from April 26,
1888; but if the court be of opinion that the plaintiffs are not
entitled to recover as against the terre-tenant, judgment to be
entered for Charles Roggenmoser, terre-tenant."

After argument, the court, on April 12, 1890, without opin-
ion filed, entered judgment for the plaintiffs, liquidated at
$1,124.33; whereupon the terre-tenant took this appeal speci-
fying that the court erred:

1. In entering judgment for the plaintiffs on the case stated.

*Mr. J. B. Colahan, Jr.,* (with him *Mr. John G. Johnson*),
for the appellant:

1. The facts do not establish anything more than that
Daniel J. Murphy traded at the time in question as Daniel
Murphy, and this amounts to nothing more than if he had
done business under the name of Daniel Murphy & Co.
Whatever name he did business under, or whatever abbrevi-
ated name he may have been known by among his intimate
acquaintances, his true name remained the same. The facts
show that he had not abandoned the J as a part of his name,
and, as there were other Daniel Murphys in the city, it was an

important mark by which to distinguish him.    The terre-tenant has been guilty of no laches, but has done all that he was bound to do in the way of examining for liens.

2. The terre-tenant was entitled to record notice of the judgment, and no part of it could rest in parol: Zimmerman v. Briggans, 5 W. 186.   And it was the plaintiffs' duty to see that their judgment was rightly entered, so as to give notice to purchasers ; and the middle initial of the defendant's name is essential, when its omission may deceive a purchaser : Wood v. Reynolds, 7 W. & S. 406 ; Heil's App., 40 Pa. 453 ; Hutchinson's App., 92 Pa. 186.   Any other rule would bring conveyancing to a standstill in a city like Philadelphia.   The only safeguard of purchasers will lie in a decision that a man can have but one name at a time, and that the occasional or even frequent use of an additional name does not amount to an abandonment or change of the real one.   Jenny v. Zehnder, 101 Pa. 296, was not intended to overrule Wood v. Reynolds, supra, and is distinguishable from the case at bar.

*Mr. Henry T. Dechert* (with him *Mr. Henry M. Dechert*), for the appellees :

1. The appellant's argument ignores the facts that the defendant signed the judgment note by his usual name, " Daniel Murphy ; " that his identity was fixed by the record, through the prothonotary's practice of requiring his occupation and residence to be given on the judgment note ; and that he was known to the plaintiffs as Daniel Murphy only, and was so known generally.   His business was so carried on for sixteen years.   The argument, however, that Daniel Murphy was a trading name or a nickname for Daniel J. Murphy, cannot be urged seriously in view of the facts.   On the contrary, the case stated finds that the defendant was known generally as Daniel Murphy.   The only instances of his use of the initial J are in acquiring and conveying a single piece of real estate.

2. The form in which the defendant's name appeared in the city directory is irrelevant, as it was admittedly not authorized by him.   Nor can the name by which he has done business in another city, since the plaintiffs' rights became vested, in any manner affect the case.   And it was no part of the plaintiffs' duty to examine the title to the defendant's real estate to see

Opinion of the Court.

by what name he may have chosen to take that title. Their judgment was properly entered, if the defendant was commonly and generally known by the name given on the record. The case is ruled by Jenny v. Zehnder, 101 Pa. 296. None of the cases cited by appellant affect its authority or are in conflict with it. The inconvenience of searching is an incident which cannot affect the rights of lien holders.

OPINION, MR. JUSTICE WILLIAMS:

The intention to protect an innocent purchaser against secret liens and conveyances manifested itself very early in this state. An act of the colonial legislature passed in 1772* made it the duty of " any judge or other officer of a court of record within this province, that shall sign any judgments," to enter the date of signing on the margin of the record, and declared that the lien of the judgment thereafter should begin at that date, instead of extending, by relation, to the first day of the term or the return of the original writ. Three years later† it was made the duty of purchasers to record their deeds within six months, and if they failed to do so, their unrecorded deeds were to be held fraudulent and void against subsequent bona fide purchasers and mortgagees. Prior to 1775 there was no duty to record resting on purchasers, and one buying land was bound to investigate the title at his peril: Maclay v. Work, 5 Binn. 154. In 1798 the duration of the lien of a judgment upon the defendant's land was limited to five years, unless duly revived.‡ The act of 1849 § made it the duty of the plaintiff to take notice of a sale of land by his debtor, and provided that, as to a purchaser, the lien of the judgment should be discharged, unless such purchaser was warned by scire facias within five years after he placed his deed upon the record, notwithstanding the judgment may have been regularly revived against the defendant. To facilitate searches, separate judgment dockets were provided for in 1827,‖ and our present system of lien dockets, as judgment indexes, was adopted in

---

* Act of March 27, 1772, 1 Sm. L. 390.
† Act of March 18, 1775, 1 Sm. L. 422.
‡ Act of April 4, 1798, 3 Sm. L. 531.
§ Perhaps, § 8, act of April 16, 1849, P. L. 664.
‖ Sect. 3, act of March 29, 1827, 3 Sm. L. 319.

Opinion of the Court.

1856.* The act provided "that the lien of a judgment shall not commence or be continued against any purchaser or mortgagee unless the same be entered in the county where the real estate is situated, in a book to be called the judgment index . . . . , and the plaintiff shall furnish the proper information to enable the prothonotary to prepare said entry." Among other things, the entry must show the names of the parties against whom a lien is entered. The purchaser is bound to take notice of liens appearing on the judgment index, but he is not bound to look beyond it; and, if his search discloses the existence of no lien entered there against his vendor, he may complete the transaction, and pay over the purchase money in safety. Upon this general proposition there is no difference of opinion. The question presented is, through what modifications must one who proposes to become a purchaser pursue the name of his vendor?

In the case now before us, one Daniel J. Murphy owned a lot of land at the corner of Myrtle and Holley streets, in the city of Philadelphia. His deed for the same was regularly recorded, as was a mortgage given by him for part of the purchase money. He took and he encumbered the title in his proper name as Daniel J. Murphy. Roggenmoser desired to buy the lot. He found the title properly recorded, and encumbered by a mortgage. Turning from the recorder's office to that of the prothonotary, he caused search to be made for liens on the judgment index against Daniel J. Murphy, and found none. He then completed his purchase, settled the purchase price, and received and recorded his deed. This was in 1888. In June of that year Murphy went to Chicago to reside. In 1889 the plaintiff, who had a judgment against Daniel Murphy, issued his writ of scire facias, and served Roggenmoser as terretenant.

Was the judgment against Daniel Murphy a lien on the lot? It is admitted that Daniel Murphy and Daniel J. Murphy are the same person. It is clear, therefore, that real estate in the hands of that person would be bound. Having signed his name in the form in which it appears on the judgment index, he could not object to the enforcement of the judgment against

*Act of April 22, 1856, P. L. 532.

his property. As between him and his creditor, it is a question of personal identity. But the defendant is not objecting. It is a purchaser who bought after a search of the records, and with no actual notice of the existence of this judgment, who claims protection. If he did all the law required of him, he is entitled to protection against the judgment of the plaintiffs. If he did not, then he must suffer for his want of care in making the search.

The plaintiffs contend that he was bound to take notice of this judgment, because it was a lien against his vendor, and could have been enforced against the land in his hands. It appears in the case stated that Murphy, in the transaction of his business, used his name in various forms. On his sign it was D. Murphy. He gave some notes as Dan Murphy, some as Daniel Murphy, and it is clear that he took and conveyed title as Daniel J. Murphy. In the city directory it appeared, at and for years before the sale to Roggenmoser, as Daniel J. Murphy. If a judgment had been entered on a note signed, " Dan Murphy," and on another signed " D. Murphy," there is no reason that can be urged in support of the lien now before us, that could not, with equal force, be urged in support of the lien of both the others. All were signed by the same man, and were for debts due by him. If the creditor has no duty resting on him, but is to be protected because Daniel J. Murphy was his debtor in fact, notwithstanding he did not put his name correctly to the note, then all the forms of the name used in signing the notes stand on the same ground. In order to see the practical operation of such a holding, we have looked into the city directory, and find the name of Daniel Murphy, with various middle letters and without any, occurs twenty times. But " D " is the initial of David, Dennis, and many other first names besides Daniel. To exhaust the possibilities as to D. Murphy would require searches running into the hundreds.

But without laying too much stress on the argument ab inconvenienti, or the apparent legislative intent, let us glance at our cases bearing upon this question. In several cases, among which are Ridgway's App., 15 Pa. 177; York Bank's App., 36 Pa. 458; and Smith's App., 47 Pa. 128, it has been held that a lien entered in the last name of the defendant, is not

Opinion of the Court.

a lien on the real estate of the defendant in the hands of bona fide purchasers. For example, a lien entered against the firm of McFall & Martin does not bind the separate real estate of the partners in the hands of purchasers, because of the absence of the first names of McFall and of Martin. Not only must the first name appear, but it must be correct; for in Zimmerman v. Briggans, 5 W. 186, the judgment was entered on a bond. The bond was signed, Jacob Briggans, which was the true name of the obligor. The prothonotary made a mistake, and entered the name in the lien docket as John Briggans. An examination of the files would have shown the mistake, but this court held that subsequent creditors were not bound to go beyond the lien docket, and postponed the judgment, because of the mistake in the first name. It is not enough that names are idem sonans. In Heil's App., 40 Pa. 453, the true name of the defendant was George P. Yoest. It was entered on the index against George P. Joest. The first name was right. The last name was idem sonans with the right name of the defendant, but it was held that the purchaser had no notice of the lien from the record. The reason evidently is that the record addresses itself to the eye, and not to the ear alone. The purchaser was bound to look under the letter Y, which was the initial letter of his vendor's name. Not finding a lien there, he was not bound to go further, and the lien was postponed. But in Wood v. Reynolds, 7 W. & S. 406, our precise question was decided. A note was signed by John M. Gruver. By some oversight of the prothonotary the " M " was omitted, and the lien entered against John Gruver. A purchaser from John M. Gruver made search for liens against his vendor, but found none, and completed his purchase. We held that he had done all that was required of him, and that the judgment could not be enforced against the land in his hands. This case was followed in Hutchinson's App., 92 Pa. 186, and the rule distinctly laid down that " the omission of the middle letter in a name on the judgment index, is fatal to a lien " as against bona fide purchasers.

From this review of the cases it will be seen that the rule was well settled in this state when the case of Jenny v. Zehnder, 101 Pa. 296, came before this court. In that case, a different rule was adopted, which is wholly inconsistent with

Wood v. Reynolds and Hutchinson's Appeal, and Myer v. Fegaly, 39 Pa. 429, is cited as authority for it. An examination of the latter case will show that it does not sustain the rule laid down in Jenny v. Zehnder, nor afford it any aid whatever. The case was this: One John Bubb executed a judgment note. The prothonotary of Lancaster county entered judgment upon it against John Bobb. This judgment was held to be notice because the two names are identical. They are different modes of spelling the same name, and, as was said by the court, are idem sonans, at least in the German counties, of which Lancaster is one. The name was found under the proper title in the index, with the correct first name, and with a variation in spelling in the middle letter which made no change in the name as spoken. Similar instances are the names of Kopp and Kupp, and of Kolp and Kulp, which are merely different forms of the same name, with the same initial and the same pronunciation.

It is to be regretted that Wood v. Reynolds and Hutchinson's Appeal had not been considered in Jenny v. Zehnder. The learned judge of the court below followed the last case faithfully, but we feel constrained to say what he could not, that we prefer and shall follow the old and well-settled line of cases to which we have referred. The rule of Wood v. Reynolds is not only most in harmony with the spirit of our legislation, and with our own decided cases, but it is equitable in its operations. Murphy's title was on the record. Whoever dealt with him on the credit of his real estate was bound to know what appeared in his recorded title. It was as much the duty of one who was about to trust him with money or goods, because of his ownership of land, to know how and by what name he held it, as it was the duty of one about to purchase the land to make the same inquiries. If the creditor neglected his duty, he must lose in consequence. If the purchaser neglected his, he must lose. Because the creditor in this case did neglect to examine the record, he has a note signed with only part of the maker's name, on which judgment has been entered. With no notice of the habit of his vendor to sign notes in several different ways, and with no means of notice of liens but the record, the purchaser examined, exhausted the means of knowledge within his reach, and, finding no lien against Dan-

iel J. Murphy or D. J. Murphy, settled with his vendor, and took his deed. If one of these parties must lose, in good conscience it should be he whose neglect to avail himself of the information which the record could have given him, made the loss by one or the other inevitable.

> The judgment is reversed, and judgment is now entered in favor of the defendant upon the case stated.