Lambert *v.* K-Y Transportation Co. et al.,
Appellants.

Argued November 15, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld and James, JJ.

*Stewart P. McConnel,* and with him *Joseph A. Tritschler,* for appellant.

*Leonard L. Ewing* of *Reed and Ewing,* for appellee.

OPINION BY BALDRIGE, J., April 23, 1934:

The appellants petitioned the learned court below to stay an execution and discharge a levy made upon real estate on the ground that the judgment under which the execution was issued was not a lien upon the premises levied upon. After hearing the rule was discharged, and it is this action that is the subject of appellants' complaint.

There was practically no dispute as to the underlying facts. Certain land in Patterson Township, Beaver County, was conveyed as follows:

June 10, 1922, by Frank M. Steele et ux., and Harry E. Steele et ux., to the K-Y Transportation Company, a corporation under the laws of the state of Pennsylvania.

July 14, 1926, by K-Y Transportation Company to Louis C. Kennedy and Margaret L. Kennedy, his wife.

October 14, 1927, by Louis C. Kennedy and Margaret L. Kennedy, his wife, to the Bender Service Company, Inc., a Delaware corporation.

November 9, 1927, by the Bender Service Company, Inc., to Adam Clyde Stone and Ethel Mae Stone.

December 6, 1928, by Adam Clyde Stone and Ethel Mae Stone to Pennzoil Company.

On September 13, 1922, C. W. Lambert, by virtue of a warrant of attorney, entered judgment against the K-Y Transportation Company, then owner of the above-mentioned premises. This judgment, under the system adopted in Beaver County, should have been

indexed in Judgment Index No. 6, Vol. K, at page 186
—the place designated for the indexing of judgments
against corporations, but instead, it was indexed in
that volume at page 105.

In August, 1927, within five years from the entry of
the original judgment, the plaintiff caused a writ of
scire facias to issue against the K-Y Transportation
Company, with notice to Louis C. Kennedy and Mar-
garet L. Kennedy, his wife, as terre tenants, to whom
the property had previously been conveyed, for the
purpose of reviving and continuing the lien of the
judgment. When the writ of scire facias was issued,
it was indexed on the proper page in the judgment
index against the K-Y Transportation Company as a
corporation, as was the judgment taken thereon. The
writ of scire facias, as indexed on the judgment docket,
specifically referred to the original judgment, as fol-
lows: "Sci. fa. sur No. 26, December Term, 1922."
On November 2, 1932, the plaintiff caused a writ of
scire facias, and on November 9, 1932, a writ of fieri
facias, to be issued upon the judgment, directing the
sheriff to levy upon the hereinbefore-described prem-
ises.

The question before us is whether the judgment is
a lien upon the land now owned by the Pennzoil Com-
pany. The judgment was, undoubtedly, good against
the original owner: The York Bank's App., 36 Pa.
458. The judgment having been defectively indexed,
the answer to our present inquiry hinges on whether
the subsequent owners had actual notice of the judg-
ment or of the existence of such circumstances as to
effect them with constructive notice thereof. A sub-
sequent purchaser, who has actual notice of a judg-
ment, takes the premises conveyed subject to the lien
thereof. In Hickman's Est., 40 Pa. Superior Ct. 244,
247, we said: "The validity of the judgment as between
the parties does not depend upon its entry in the judg-

ment docket. That docket forms no part of the true record of the court. Its use as authorized by the Act of March 29, 1827, P. L. 154, is to give notice to purchasers, subsequent lien creditors and other parties interested. A defective entry in the judgment docket, therefore, merely fails to give notice. But even a party entitled to notice from the judgment docket may receive it from some other source and be bound. He is not required to look elsewhere, and cannot be affected by constructive notice unless the entry in the docket conform to the legal requirements, but actual notice to such party before his interest attaches affects him: Ridgway, Budd & Co.'s App., 15 Pa. 177; The York's Bank App., 36 Pa. 458; Stephen's Executors' App., 38 Pa. 9." See, also, Coyne v. Souther et al., 61 Pa. 455.

Kennedy was the president of the original defendant, K-Y Transportation Company. Following the entry of the judgment, he, on several occasions, secured release of certain properties from the lien thereof. He also admitted in his testimony that he knew of the existence of the judgment after it was entered and prior to the time he and his wife became the owners. The Bender Service Company had title to the premises for a very brief period of time. Stone and Kennedy were both stockholders of that company. Stone was treasurer and Kennedy, secretary. The only cash consideration paid was by Stone from his individual funds at the time title was taken. This company authorized the execution of the deed to Stone by a resolution reciting that the purchase money had been originally paid by him, "and the corporation had not paid anything for it." Both Mr. and Mrs. Stone testified that they had no knowledge of this judgment. Kennedy testified that he did not recall whether he had advised them of its existence prior to their purchase of the land. At the time the Stones sold to the

Pennzoil Company, they, undoubtedly, had notice. They appear to have relied upon the advice of counsel that the judgment was not good by reason of the failure originally to index it properly. When the conveyance was made to the Pennzoil Company, it retained $1,500 to protect itself against this judgment, which sum was deposited in escrow, under a written agreement entered into at that time. The learned court below concluded that, in view of the close relationship of Kennedy and Stone, and their dealings with reference to this property, the Stones, as well as the Pennzoil Company, had actual knowledge of the judgment. The lower court states that this conclusion was reached in the exercise of its sound discretion after considering the credibility of the witnesses and hearing them testify. We are not warranted in interfering with the court's action unless there has been an abuse of discretion (Warren Savings Bank & Trust Co. v. Foley, 294 Pa. 176, 144 A. 84); none appears.

The learned court below reached the further conclusion that, in the issuance of the writ of scire facias, on August 19, 1927, and its proper indexing, prior to the conveyance by the Kennedys to the Bender Service Company, and by the latter to the Stones, constructive notice existed of the judgment.

The petitioners rely upon the provision of the Act of April 22, 1856, P. L. 532, §3 (17 PS §1922), that ''The lien of no judgment, recognizance, execution levied on real estate in the same ...... or of writs of scire facias to revive ...... shall commence or be continued as against any purchaser ...... unless the same be indexed in the county where the real estate is situated, in a book to be called the judgment index.'' The meaning of the statute has been construed by the courts to be that a purchaser or subsequent lien creditor is affected with notice of whatever may be reasonably suggested by the record; that a notice is suffi-

cient that will naturally lead the investigator to a discovery of the judgment and the identity of the defendant: Stark v. Lamberton, 282 Pa. 219, 127 A. 631.

In the case of First National Bank of Spring Mills v. Walker et al., 296 Pa. 192, 145 A. 804, the court held, after discussing the effect of a satisfaction entered upon the judgment index, which recited that the satisfaction was pursuant to the decree of the court, that the purchaser, subsequent to the entry of such satisfaction, could not rely upon the index, but was bound to examine the decree of the court. The court there said (p. 196): " 'The record of a judgment properly entered and docketed is notice of what it contains or recites as well as of such facts as may be fairly inferred from its recitals': 34 C. J. 96. Such record carries with it 'constructive notice of all facts therein expressly recited as well as of such facts as might be fairly inferred from its recitals, but nothing more.' "

As a general rule, a purchaser is not required to look beyond the judgment docket for liens, but that is not so if there appears thereon something that should reasonably put a party on inquiry; that amounts to a notice, and then it is the duty of a purchaser or creditor to investigate if it would lead to knowledge of the requisite facts: Parke v. Neeley, 90 Pa. 52. We have already observed that the proper judgment index, when the writ of scire facias was issued, not only called attention to the issuance of that writ, but also directly pointed to the original judgment upon which it issued: Appeal of Fogelsville L. & B. Assn., 89 Pa. 293. A proper inquiry, had it been pursued by the searcher of the title, would have disclosed the original judgment and its continued lien. Therefore, the record as it existed amounted to constructive notice of the judgment.

We concur with the conclusion reached by the learned court below that there was not only actual,

but also constructive, knowledge upon the part of the appellants of the judgment, and that it is an existing and binding lien against the premises sought to be discharged.

Order of the learned court below discharging the rule is affirmed at appellants' costs.