Jay Vending, Inc., et al. Appeals.

Argued March 20, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Edward Fackenthal* and *Edward N. Kurland,* with them *Charles Blasband,* and *Henderson, Wetherill, O'Hey and Horsey,* for appellants.

*L. Carter Anderson,* with him *George M. Brodhead, James A. Cassel, Thomas E. Waters,* and *Rawle & Henderson,* and *Waters, Fleer, Cooper & Gallager,* for appellee.

260

OPINION BY PRICE, J., September 22, 1975:

This is an appeal by judgment creditors from an order of Judge Richard E. LOWE of the Court of Common Pleas of Montgomery County, sustaining exceptions by appellee-judgment creditor to a sheriff's schedule of distribution. The controversy arises from the following facts.

Appellee, Boenning and Scattergood, Inc. (Boenning) obtained a judgment against John E. Jennings and Helen M. Jennings, his wife, in the amount of $30,500 on April 14, 1966. On July 3, 1970, Boenning initiated execution proceedings against real property owned by Jennings located at 250 Bell Road, Montgomery County. However, this writ of execution was not formally recorded in the judgment index in the Prothonotary's Office in Montgomery County. Mr. and Mrs. Jennings moved for a stay order which was issued on July 13, 1970, to abide resolution of the judgment's validity. On July 29, 1972, the stay order was discharged by the lower court and that dismissal was affirmed per curiam by this court in *Boenning & Company v. Jennings*, 222 Pa. Superior Ct. 712, 294 A.2d 739 (1972).

Boenning then attempted to effect a second execution upon the Jennings' property, but again neglected to properly index the writ. Shortly thereafter, Mr. and Mrs. Jennings obtained an injunction from the United States District Court for the Eastern District of Pennsylvania which stayed the proceedings until December of 1973, when the United States Court of Appeals for the Third Circuit reversed the District Court. Boenning, at that time, instituted its third execution and the property was listed for sheriff's sale on February 20, 1974. On the same day the property was also scheduled for sale on the foreclosure of a first mortage in favor of the Equitable Life Assurance Society. The sum of $85,000 was realized from the sale, and after satisfaction of liens for taxes, costs of execution, and the Equitable mortgage, all of

which had undisputed priority, the sum of $66,679.50 was available for distribution. The liens asserted against the remaining funds are as follows:

| Debt | Date of Lien | Approx. Amt. of Debt with Interest |
|---|---|---|
| 1. Boenning Judgment | April, 1966 | $48,500 |
| 2. Strawbridge and Clothier Judgment | March, 1971 | 1,650 |
| 3. McCoy Mortgage | August, 1971 | 30,000 |
| 4. Margolies Mortgage | December, 1971 | 17,500 |
| 5. Jay Vending Co. Judgment | June 19, 1973 | 21,000 |
| 6. McCoy Judgment | June 20, 1973 | 1,300 |
| 7. O'Hey Judgment | June 20, 1973 | 21,000 |

The mortgage and judgment of John H. McCoy were recorded with knowledge of the Boenning judgment. However, the liens of Margolies and Jay Vending Co. against the realty were entered of record more than five years from the entry of the unrevived Boenning judgment of April 14, 1966. Moreover, these lienholders at no time had any knowledge of the Boenning judgment, nor of the execution proceedings relating thereto.

Since Boenning's judgment had not been entered in the judgment index for nearly eight years preceding the date of the sale, the sheriff did not include it in his proposed schedule of distribution. Boenning filed exceptions to the schedule, seeking to maintain its position, claiming its lien had been improperly omitted.

On October 30, 1974, the lower court sustained the exceptions of Boenning and directed that they be accorded priority over all judgment creditors with the exception of Strawbridge and Clothier. We disagree with that result. Boenning's argument that the July 14, 1970, stay order[1] had the effect of relieving it of its duty to

---

1. "AND NOW, this 13th day of July, 1970, in consideration of the within petition, a rule to show cause why the judgment should not be opened and the execution proceedings stayed and all

revive its judgment is incorrect. Traditionally, an order opening a judgment for the purpose of letting in a defense neither extinguishes nor impairs a lien, and a judge is powerless to amend the lien. *Duffey v. Houtz*, 105 Pa. 96 (1884) ; *Kittanning Insurance Company v. Scott*, 101 Pa. 449 (1882). The language in *Duffey* at 101-02 is: "The pendency of the proceedings does not operate to revive the judgment or continue its lien during the intervening time; *Styers' Appeal*, 9 Harris, 86; nor when it is opened for defence [sic], can an order of court that 'the judgment remain as security' extend the lien. *Fricker's Appeal*, 1 Watts, 393."

This language refers to the prevailing lien law of that time[2] which provided, ". . . no order or rule of court, or any other process or proceeding thereof, shall have the effect of obviating the necessity of the revival in manner herein prescribed of any judgment whatever." The present lien law,[3] while not containing language identical to the 1827 lien law, does limit the duration of a lien to five years unless it is revived as provided.[4] A lien is not affected by the opening of a judgment to permit a defense. *Sanctis v. Lagerbusch*, 213 Pa. Superior Ct. 483, 249 A.2d 919 (1968). Whatever effect the litigation involving the stay order had with respect to Boenning's

---

further proceedings stayed pending determination of the petition, is hereby granted, provided that petitioner pay all record costs incurred by plaintiff as required by Rule 3121* (2) of the Montgomery County Rules of Civil Procedure and provided further that the stay of proceedings shall not disturb the lien of the judgment pending resolution of the petition.

"RULE RETURNABLE the 31st day of July, 1970, at 9:00 o'clock a.m. at the Sandy Street Court House, Room 'C', Norristown, Pennsylvania. BY THE COURT: J. WILLIAM DITTER, JR., J."

2.  Act of March 26, 1827, P.L. 129, §§1, 3, repealed, Act of May 28, 1943, P.L. 774, §3 (12 P.S. §§868-870).

3.  Act of July 3, 1947, P.L. 1234, §1 (12 P.S. §877) *et seq.*

4.  Act of July 3, 1947, P.L. 1234, §2 (12 P.S. §878).

judgment, it did not preclude or excuse Boenning from properly reviving its lien.

As of July 3, 1970, when the writ of execution was issued, Jennings' premises at 250 Bell Road were subject to Boenning's lien. McCoy, who has a lien junior to Boenning's, had full knowledge of the Boenning lien, since McCoy's attorney, Mr. William O'Hey, was also representing Mr. and Mrs. Jennings in their litigation against Boenning.[5] The appellants rely upon the fact that the writ of execution issued on July 3, 1970, was not indexed. However, it is well established that the sole purpose of indexing is to give notice of the lien to subsequent lienors and purchasers. Where there is actual notice, indexing is not necessary. In *Russeck v. Shapiro,* 170 Pa. Superior Ct. 89, 84 A.2d 514 (1951), the court indicated that a purchaser would have taken subject to an incorrectly indexed judgment had he had actual knowledge of such. This court stated in *Lambert v. K-Y Transportation Co.,* 113 Pa. Superior Ct. 82, 172 A. 180 (1934), that a notice theory was adopted under which indexing of the judgment became necessary for priority as to all except those with actual notice of the judgment. Therefore, McCoy and O'Hey, by having actual knowledge of Boenning's lien will take in the same priority as if Boenning had correctly indexed its writ of execution.

Having determined that Boenning's judgment remains superior to those of McCoy and O'Hey, we must align the priorities of all the interested lien creditors. McCoy's mortgage has been shown to be superior to both the Margolies mortgage and the Jay Vending Company judgment. However, it is also clear that Boenning's lien was not revived against Margolies or Jay Vending, neither of which had actual knowledge of the execution proceedings. Therefore, Margolies and Jay Vending have priority over Boenning, and this problem constitutes a circular lien.

---

5. In addition, the O'Hey judgment of June 20, 1973, belongs to Attorney William O'Hey.

Pennsylvania courts have used the temporal priority rule to break the circle and realign the parties: first in time—first in right.[6] This rule was applied in *Miller's Appeal,* 122 Pa. 95, 15 A. 672 (1888) ; *Thomas' Appeal,* 69 Pa. 120 (1871) ; *Manufacturer's and Mechanics' Bank v. Bank of Pennsylvania,* 7 Watts and Sergeant 335 (1844) ; *Wilcocks v. Waln,* 10 Sergeant and Rawle 380 (1824) ; and in *Dowling v. Vallett,* 70 Pa. Superior Ct. 481 (1918).

However, the rule of temporal priority has never been applied when the circuity of liens has arisen solely as the result of the neglect of a prior lienholder in failing to properly record or revive his lien.

In *Wilcocks v. Waln, supra,* the circuity arose by operation of law, wherein a lien of the federal government was given automatic preference by laws of the United States, although that lien arose later in time. The circuity problem in *Manufacturer's and Mechanics' Bank, supra,* and *Dowling v. Vallett, supra,* was not caused by the neglect of one lienholder to record or index, as is the case before us, but by technical imperfections in the lienholder's attempt to record.

In *Thomas' Appeal, supra,* and *Miller's Appeal, supra,* the circuity of liens resulted from subrogation, such as a circuity arising from the action of one lienholder in gaining priority as a result of a waiver of a widow's statutory exemption *(Miller)* or a waiver of a debtor's exemption *(Thomas)* while another benefitted from no such waiver.

Other jurisdictions have been faced with the specific problem we face here—a circuity resulting from the

---

6. The rationale of the temporal priority rule is that the last of three or more liens in the order of their succession being superior to the first but inferior to the second gains no practical advantage from its superiority, because it could not be preferred to the first without being preferred also to the second, to which it is subsequent.

failure of a prior lienholder to record his lien. The courts in *Day v. Munson,* 14 Ohio St. 488 (1863), and *Hoag v. Sayre,* 33 N.J. Eq. 552 (1881), faced this dilemma and fashioned clearly reasoned solutions for it.

In *Day v. Munson, supra,* there was a circuitous lien involving three mortgages. The first mortgage lost its lien as against the third by failure to re-file within the statutory period of one year, so that the third mortgage was taken without notice of the first. However, the second mortgage lien was taken with actual notice of the prior mortgage, and had also maintained its priority over the third. As is the situation in the present case, the proceeds of the mortgaged property were insufficient to satisfy all the liens. A similar set of facts occurred in *Hoag v. Sayre, supra.* Both the *Hoag* court and the *Day* court used the same approach in solving the priorities problem. Both courts marshalled the funds in the following manner: to the third, if it be for as large a sum or a larger sum secured by the first; then the second encumbrance will be paid in full if the property is sufficient, and then the residue to the third, if there is a residue; and then the first lien will come in. Judge DIXON, in his dissent in *Hoag v. Sayre, supra,* at 562-63, is credited with extending and detailing, in a manner that has subsequently been widely accepted, this position:

> "Therefore, if there be three encumbrancers, A, B and C, in the order of time, and A's lien be prior to B's, and B's to C's, but for A's omission to properly register his lien, it is void as to C's, then the fund should be disposed as follows:
>
> 1. Deduct from the whole fund the amount of B's lien, and apply the balance to pay C. This gives C just what he would have if A had no Existence.
>
> 2. Deduct from the whole fund the amount of A's lien, and apply the balance to pay B. This gives B what he is entitled to.

3. The balance remaining after these payments are made to B and C is to be applied to A's lien."

In the present case the judgment creditors shall be identified by the following: Boenning—"A", McCoy—"B", and "C" will represent both Margolies and Jay Vending Company.

We believe a distribution must be made with compliance to the formula previously expressed for the reasons pointed out in *Execution Sales: Lien Divestiture and Distribution of Proceeds in Pennsylvania*, 58 Dick. L. Rev. 244, 265-66 (1954) : "Where A has failed to record, B has recorded with notice, and C has recorded without notice, C alone is in a completely helpless position. A could have prevented the circuity by recording. B could have prevented it by refusing to accept a mortgage unless and until the prior mortgage had been recorded. C, however, cannot protect himself at all if he may not rely on the record. He can do nothing to prevent the circuity. If the only parties involved were A and C, the latter, of course, would be ahead. Shall the intermediation of B be permitted to yield A a windfall merely because B happened to have notice of A's unrecorded mortgage? Since C alone could have done nothing to have prevented the situation from arising, it would seem that he ought to be accorded the protection that reliance on the record was intended to afford. C therefore ought first to be paid that sum which he would have received had the priorities been as they appeared on the record. To hold otherwise would impair the results intended to be achieved by recording acts, and would act as an effective restraint on many security transactions, for no one could safely lend money on the security of real estate if it were already subject to an encumbrance."

An equitable distribution in this case which encourages compliance with the Judgment Lien Law[7] is:

---

7.   Act of July 3, 1947, P.L. 1234, §1 (12 P.S. §877) *et seq.*

| | |
|---|---:|
| 1. Boenning Judgment | $13,470.50 |
| 2. Strawbridge and Clothier Judgment (Undisputed) | 1,650.00 |
| 3. McCoy Mortgage | 16,529.50 |
| 4, Margolies Mortgage | 17,500.00 |
| 5. Jay Vending Co. | 17,529.50 |
| | $66,679.50[8] |

Reversed and remanded to the lower court for a distribution consistent with this opinion.

---

8. These figures were arrived at by the use of the formula described earlier in this opinion.