**Bank of America v. DE&S Properties**

C.P. of Monroe County, no. 589 CV 2009.

*Daniel S. Bernheim III,* for petitioner.
*Mark S. Love* and *Michael V. Gazza,* for respondents.

ZULICK, *J.,* August 9, 2010—This is a petition to set aside a judicial sale held on June 10, 2009 of a property formerly owned by an Aleksander Gikher. Bank of America N.A. filed a "motion to set aside tax claim sale" on May 19, 2010. DE&S Properties Inc. d/b/a Classic Quality Homes (DE&S), the judicial sale purchaser, filed an answer to the petition on July 23, 2010. A hearing was scheduled on the petition for July 27, 2010. The Monroe County Tax Claim Bureau did not file an answer but did file a brief.

## FINDINGS OF FACT

(1) Aleksander Gikher acquired a lot at 6258 Park Place, Tobyhanna, Pennsylvania, from Lukasasz Junczewsi by deed dated July 18, 2007 and recorded on the

same date in the Monroe County Office for the Recording of Deeds, in deed book volume 2311 at page. 1556. See petitioner's exhibit 2.

(2) On July 20, 2007, Aleksander Gikher obtained a mortgage from Bank of America N.A. securing a note for $100,000. The mortgage was recorded in the Monroe County office for the recording of deeds on August 30, 2007.

(3) The mortgagor's name stated in the mortgage was "Alex Gikher" not Aleksander Gikher.

(4) The description of the property subject to the mortgage was "Deed recorded in book 2311, page 1556, parcel ID 3-8E-1-52, Coolbaugh Twp., which currently has the address of 6258 Park Place, Tobyhanna, Pennsylvania, 18466."

(5) The record book reference of book 2311, page 1556 in the mortgage property description was to the property owned by Aleksander Gikher.

(6) The parcel ID no. 3-8E-1-52 was to another property owned by Aleksander Gikher, not the one which was the subject of the judicial sale.

(7) The parcel ID no. of the property sold at judicial sale was 3-8C-1-447.

(8) Mr. Gikher did not pay the 2006 taxes on the property and the property was exposed to upset tax sale in September 2008. There were no purchasers of the property at the upset sale.

(9) The Monroe County Tax Claim Bureau petitioned the court to sell the Gikher property at judicial sale.

(10) On June 10, 2009, the property was exposed at a judicial sale and DE&S Properties Inc. d/b/a Classic Quality Homes purchased the property for $337 plus costs.

(11) The parties stipulated that the Monroe County Tax Claim Bureau did not give notice of the judicial sale to petitioner Bank of America N.A., mortgagee of Alex Gikher, in the July 20, 2007 mortgage.

(12) Beverly Dirvonas, a principal of Pocono Property Abstract Inc., testified as an expert in the abstracting of land titles. Ms. Dirvonas said that she did a search in the Monroe County Recorder of Deeds office which revealed the presence of the deed from Junczewsi to Aleksander Gikher recorded July 18, 2007, a mortgage to Bank of America N.A. from Aleksander Gikher recorded August 9, 2007 and a mortgage from Alex Gikher to Bank of America N.A. recorded August 30, 2007. She said that when she found the mortgage from Alex Gikher to Bank of America N.A. in Coolbaugh Township dated August 30, 2007, the name "Alex" was similar enough to Aleksander for her to check that mortgage.

(13) When Ms. Dirvonas checked the Alex Gikher mortgage she saw that the description of the mortgage matched the record book and page of the property acquired by Aleksander Gikher from Lukasz Junczewsi.

(14) Ms. Dirvonas testified that in her opinion, a properly conducted title search would have revealed the existence of the Bank of America mortgage, because of the similarity of the name "Alex Gikher" to the owner's name of "Aleksander Gikheri."

(15) After purchasing the Gikher property at judicial sale for a bid of $337.56, plus costs of $881.30, respon-

dent DE&S Properties, d/b/a Classic Quality Homes, built a home on the lot.

## DISCUSSION

The Real Estate Tax Sale Law, 72 Pa.C.S. §5860.610, provides that when a property does not sell at upset sale for unpaid taxes, the tax claim bureau may petition the court for a judicial sale of the property. A judicial sale will sell the property "freed and cleared of all taxes and municipal claims, mortgages, liens, charges and estates . . . ." 72 Pa.C.S. §5860.612. The statute sets forth the requirements of notice to the owner of record and lienholders of the property to be sold:

"In cases where the upset price shall not be bid at any such sale, the sale shall be continued, but not beyond the end of the calendar year, without further advertising, and the bureau may, at any time during or after the continuance, and shall, immediately at the written direction of a taxing district, file its petition in the court of common pleas of the county to sell the property under sections 612 and 612.1. The bureau shall set forth on the petition (1) the tax claim upon which the property was exposed for sale, (2) that neither the owner, his heirs or legal representatives of any lien creditor, his heirs, assigns or legal representatives or any lien creditor, his heirs, assigns or legal representatives or other person interested has caused stay of sale, discharge of tax claim or removal from sale, (3) that the property was exposed to public sale and the date of such sale, (4) that before exposing the property to public sale the bureau fixed an upset price, as herein provided, and (5) that it was unable to obtain a bid sufficient to pay said upset price. *Upon*

*presentation of such petition, accompanied with searches showing the state of the record and the ownership of the property and all . . . mortgages . . . against the same, the court shall grant a rule upon all parties thus shown to be interested to appear and show cause why a decree should not be made that said property be sold, freed and cleared of their respective . . . mortgages . . . ."* 72 P.S. §5860.610. (emphasis added)

Section 610 of the RETSL requires the bureau to do a title search to determine the owners and lienholders of the property, and to serve those entities with notice of the judicial sale. The parties have stipulated that Bank of America was not named as a lienholder in the bureau's search of the property, and as a result, did not receive notice of the judicial sale.

The risk that a tax bureau negligently performed the title search is borne by the purchaser at judicial sale. *Plank v. Monroe County Tax Claim Bureau,* 735 A.2d 178, 183 (Pa. Commw. 1999). The rule of caveat emptor, *i.e.,* let the buyer beware, applies to property sold at real estate tax sales. *In re Judicial Sale, Tax Claim Bureau of Northampton County,* 720 A.2d 818 (Pa. Commw. 1998). There is a statute to that effect:

"In all public sales of land hereafter made by the treasurer or commissioners of the several counties of this Commonwealth, in pursuance of the laws of this Commonwealth the rule of caveat emptor shall apply, except in cases of double assessment, or where the taxes on which the sale is made shall have been previously paid, or where the lands do not lie within the county; and neither said treasurer nor commissioners shall be required to refund the purchase money, costs or taxes paid upon

any tract or tracts of land as sold as aforesaid." Section 1 of the Act of April 21, 1856, P.L. 477, as amended, 72 P.S. §5931.

It is also well-settled that land purchased at a tax sale comes with no guarantee of title. *Fulton County v. Tate,* 47 Pa. 532 (1864).

DE&S concedes that lienholders are entitled to notice of the sale and that lack of such notice to a lienholder would render the sale defective as to that party. DE&S argues however, that Bank of America is not a lien-holder entitled to notice, because its recorded mortgage to "Alex Gikher" did not provide constructive notice of a mortgage lien on property of Aleksander Gikher. DE&S cites the case of *Crouse v. Murphy,* 140 Pa. 335 21 A. 358 (1891) for the proposition that a mortgage recorded under a name different than the record owner's name is does not impose a lien on a bona fide purchaser. In *Crouse,* the Supreme Court ruled that a mortgage re-corded in the name of Daniel Murphy against property owned by Daniel J. Murphy was not constructive notice of the lien. DE&S also cites *Apollo Borough v. Clepper,* 44 Pa. Super. 185 (1910). There the Superior Court stated that a municipal claim filed in the name of Lizzie Clepper would not be a lien on lands owned by Nancy Clepper. That case turned however, on whether the claim was in personam or in rem.

BAC has cited more recent cases of the Pennsylvania Supreme Court which support the argument that a purchaser should have been on notice that this mortgage affected property of Aleksander Gikher. In *Burns v. Ross,* 215 Pa. 293, 64 A.526 (1906), the court held that a judgment entered against "Frank Ross" was a lien against

lands of "Francis Ross." The indexing statute's "requirements are met when the first or Christian name of a defendant is so indexed that a prospective purchaser examining the index ought to know from it of the existence of a lien against the property which he is about to purchase." *Id.* at 296, 64 A. at 527.

"When it is commonly known that certain first or Christian names are interchangeably used, and the initial and dominant letters of each are identical, indicating to the eye that they are the same and giving the same sound and substance to each, the judgment index must be searched for each. In the absence of a statutory requirement that the Christian name of a defendant in a judgment must be indexed exactly as it is written in the deed under which he holds title, any other rule would offend reason. When the appellant as a prospective purchaser of the Ross property, was looking for liens against Francis Ross, why should he not have looked for those indexed against 'Frank'? The two names are the same, and are used, as is universally known, as being the same: Standard Dictionary in English, vol. 2, p. 2138; Webster's International Dictionary, p. 1902. When looking for liens against "Jacob' a searcher must know that the world knows no difference between 'Jacob' and 'Jake,' and that a judgment indexed against 'Jake' may be a lien on the property of 'Jacob'. As a rule 'Mike' is used for the more dignified 'Michael', and the bearer of the latter name as the grantee of a title to him is generally known, not only to himself, but to the community in which he lives, as plain 'Mike'; and so a stronger illustration is the name 'Frank' given to 'Francis'. It is a matter of common knowledge that seldom is one bearing the Christian name of 'Francis' known by any other name than 'Frank'.

These illustrations need be pursued no further. When the appellant was looking for the title to be free from encumbrances case upon it by Francis Ross, it was his duty to see that the owner had not encumbered it in the name of 'Frank Ross'." *Id.* at 296-97, 64 A. at 527.

BAC also cites *Coral Gables Inc. v. Kerl,* 334 Pa. 441, 6 A.2d 275 (1939). There, the court addressed a question of lien priority. One judgment was in the name of Caroline Kerl and another was in the name of Caroline C. Kerl. The court noted that there was no other person by the name of Kerl living in Allegheny County at the time. The court found that the lack of a middle initial did not cause the judgment to lose its priority.

"The sole function of a name is to identify the person whom it is intended to designate, and therefore all that is legally necessary in the docketing and indexing of judgments is that the defendant should be individuated with a degree of accuracy sufficient either to lead a reasonably careful searcher to conclude that he is the person who is the object of the search, or to suggest to the searcher the wisdom of inquiry to ascertain the fact. Where there is enough to put an ordinarily prudent person upon guard, inquiry becomes a duty, and if an investigation, reasonably pursued, would disclose the identity of the judgment debtor, the subsequent lienor is bound by notice of the previous judgment even though inaccurately recorded. As was said in *Stark v. Lamberton,* 282 Pa. 219, 221, 127 A. 631, 632: 'The law merely requires an index that will naturally lead the investigator to a discovery of the judgment and an identity of the defendant.' If the index meets that requirement it has served its legal purpose." *Id.* at 447, 6 A.2d at 278.

Here the name Aleksander Gikher is a rather unusual one. Ms. Dirvonas testified that when she put the name into the search index of the recorder of deeds Landex system, six entries appeared. In these six entries, three variations of Mr. Gikher's name appeared,"Aleksander Gikher," "Aleksandr Gikher," and "Alex Gikher." The name Alex is a common nickname of Alexander, and Aleksander is clearly a foreign spelling of Alexander. A reasonably prudent title searcher would have checked "Alex Gikher". If that was done, the Landex system would have directed the searcher to the BAC mortgage which identified the Aleksander Gikher deed in the mortgage description. While this was certainly an example of poor drafting of a mortgage, BAC should have been given notice of the sale as a mortgage holder of the owner of the property.

This does not end the inquiry, because BAC contends that the judicial sale should be set aside. DE&S and the Monroe County Tax Claim Bureau contend that the proper remedy for BAC is not to set aside the sale, but to hold that the BAC mortgage lien was not discharged.

Failure of notice to a mortgagee does not vitiate a tax sale. *In re Tax Claim Bureau of Lehigh County,* 96 Pa. Commw. 452, 507 A.2d 1294 (1986), *appeal denied,* 514 Pa. 640, 523 A.2d 346 (1987). See also, *Plank v. Monroe County Tax Claim Bureau, supra.* A purchaser at a judicial tax sale takes title to the property free and clear of all mortgages and liens. Section 612 of the law, 72 P.S. §5860.612. However, where a mortgagee is not provided adequate notice of the judicial tax sale, that mortgagee's lien is undischarged and the purchasers at the judicial tax sale take the property subject to that

mortgage. *In re Tax Claim Bureau of Westmoreland County,* 149 Pa. Commw. 532, 613 A.2d 634, *appeal denied,* 533 Pa. 615, 618 A.2d 404 (1992). The sale will not be set aside.

## CONCLUSIONS OF LAW

(1) Bank of America did not receive notice of the 2009 judicial sale of the Gikher property which it was entitled to receive pursuant to 72 Pa.C.S. §610 due to its recorded mortgage which was a lien on the property.

(2) Bank of America's mortgage was not divested by the judicial sale.

## ORDER

And now, August 9, 2010, following hearing and consideration of the parties' arguments and briefs, it is ordered as follows:

(1) Bank of America's mortgage recorded on August 30, 2007 in the office for the Recording of Deeds in and for Monroe County, Pennsylvania in record book volume 2314, page 9885 was not divested as a mortgage lien from the Aleksander Gikher property more particularly described in the same office in record book volume 2311, page 1556. The mortgage lien continues in full force and effect.

(2) Bank of Americas request to set aside the judicial sale is denied.